UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.

MARK J. SPANAKOS,

    Plaintiff,                                      **JURY TRIAL DEMANDED**

v.

ALAN ARONSON, SECURE START USA, LLC,
AUTO SECURE USA INC., and AUTO SECURE INC.,

    Defendant(s).
_____/

## Complaint for Patent Infringement and Injunctive Relief

Plaintiff, Mark J. Spanakos ("Spanakos") files this Complaint for Patent Infringement and Injunctive Relief against Defendants Alan Aronson, Secure Start USA, LLC, Auto Secure USA, Inc., and Auto Secure Inc., and alleges as follows:

## Nature of This Action

1. This is a patent infringement action brought by Spanakos against Alan Aronson and the various companies Aronson has managed, based upon Aronson's continued willful infringement of U.S. Patent No. 6,927,668 (hereinafter the "Hawk Patent") owned by Spanakos, protected under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

## Parties

2. Plaintiff Spanakos is an individual that resides in the State of Florida.

3. Upon information and belief, Defendant Alan Aronson (hereinafter "Aronson") is an individual that resides at 14822 Wildflower Lane, Delray Beach, Florida 33446.

4. Upon information and belief, Defendant SECURE START USA, LLC (hereinafter "Secure Start") is or was incorporated in the State of Florida with its principal place of business at 55 SE 2nd Ave, Suite 301 Delray Beach, Florida 33444.

5. Upon information and belief, Defendant AUTO SECURE USA, INC. (hereinafter "Auto Secure USA") is or was incorporated in the State of Florida with its principal place of business at 1200 N Federal Hwy, Suite 200, Boca Raton, Florida 33432.

6. Upon information and belief, Defendant AUTO SECURE INC. (hereinafter "Auto Secure") is or was incorporated in the State of Florida with its principal place of business at 14822 Wildflower Lane Delray Beach, Florida 33446.

## Jurisdiction And Venue

7. This is an action for damages and equitable relief caused by patent infringement arising under the United States patent statutes, 35 U.S.C. § 100, *et seq.*

8. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has personal jurisdiction over Defendants as a result of their residing in and having their principal places of business in the state of Florida. In addition, the Defendants have continuous and systematic contacts with the State of Florida, including, *inter alia*, their continuous contacts with, and sales to, customers in the state of Florida. Secure Start, Auto Secure USA and Auto Secure (collectively "Aronson Companies") distribute, offer for sale, sell, use, import and/or advertise products and services that infringe on the Hawk Patent within the state of Florida, and are accessible to and accessed by customers of this District, *e.g.*, through the internet.

10. Venue is proper in this District under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b) because the Defendants reside and conduct business within this district. Additionally, the acts which give rise to the filing of this lawsuit have occurred and continue to occur in this district.

**Facts**

11. On November 21, 2000, the U.S. Patent and Trademark Office ("USPTO") received U.S. Patent Application Serial No. 09/718,530[1] entitled "Print Access Security System" by Richard Odle, Gary Odle, Robert E. Henry and David Coriaty (collectively "the Originators").

12. On July 18, 2001, the Originators assigned their rights to the Print Access Security System Patent, to Hawk International, Inc., ("Assignment 1"), becoming the Hawk Patent. A true and correct copy of Assignment 1 is attached as Exhibit "A."

13. On March 31, 2005, Hawk International Inc., assigned all rights to the Hawk Patent to Hawk Biometrics of Canada Inc. ("Assignment 2"). A true and correct copy of Assignment 2 is attached as Exhibit "B."

14. On October 28, 2008, Hawk Biometrics of Canada Inc. assigned all of its rights and interests in the Hawk Patent to Hawk Biometric Technologies, Inc., ("Assignment 3"). A true and correct copy of Assignment 3 is attached as Exhibit "C."

15. On or about February 19, 2009, Hawk Biometric Technologies, Inc. merged with Exploration Group Inc., which later changed its name to Hawk Systems, Inc.

16. On April 28, 2014, David Coriaty, without owning any rights to or interests in the Hawk Patent, caused an "assignment" to be filed with the USPTO in an attempt to assign the

---

[1] Application Number 09718530 was issued Patent Number 6927668 on August 09, 2005.

Hawk Patent to Defendant Auto Secure ("Assignment 5"). A true and correct copy of Assignment 5 is attached as Exhibit "D." This "assignment" was filed during the pendency of a state action filed by Spanakos to foreclose on a security interest agreement, secured by the Hawk Patent. Coriaty's assignment was a blatant effort to fraudulently transfer collateral, which was no longer his, to a third party to evade the effects of the state court action. The state court case pending in the 15th Judicial Circuit of Palm Beach County, Florida, is styled Mark Spanakos v. Hawk Systems, Inc., bearing case number 50 2010 CA 017971, hereinafter *Spanakos v. Hawk*.

17. On July 14, 2014, Auto Secure, without rights to the Hawk Patent, in turn caused another "assignment" of the Hawk Patent to be filed with the USPTO, attempting to assign the Hawk Patent to Defendant Auto Secure USA ("Assignment 6"). A true and correct copy of Assignment 6 in attached as Exhibit "E."

18. On December 23, 2014, the Palm Beach Circuit Court entered a judgment vesting all rights, title and interest in the Hawk Patent, from November 2008 to present, in favor of Plaintiff Spanakos. A true and correct copy of the December 23, 2014 Partial Final Judgment is attached as Exhibit "F."

19. On August 27, 2015, the Partial Final Judgment, transferring all rights, title and interest in the Hawk Patent to Spanakos, was recorded with the USPTO ("Assignment 4") reflecting the effective date of the transfer as November 1, 2008, the date of default. A true and correct copy of Assignment 4 is attached as Exhibit "G."

20. Spanakos is the lawful owner and holder of all rights, title, and interest in the Hawk Patent, including the right to sue for patent infringement.

## COUNT I
### Infringement of U.S. Patent No. 6927668
### (All Defendants)

21.     Spanakos re-alleges the allegations contained in paragraphs 1 through 20 above as if fully set forth herein.

22.     Aronson and the Aronson Companies have directly infringed upon and continue to directly infringe upon the Hawk Patent in violation of 35 U.S.C. §271(a)-(c) by making, using, offering to sell, selling (directly or through intermediaries), and/or importing, in this district and elsewhere in the United States, products using and/or containing technology protected under the Hawk Patent without authority or license from Spanakos.

23.     Upon information and belief, Aronson owns and operates the Aronson Companies.

24.     The Aronson Companies offer biometric security, using the Hawk Patent, to its customers for purchase. Simply stated, the Hawk Patent is technology whereby a sensor recognizes the blood vessels underneath the fingertip of a user, and once recognized will allow the device attached to the sensor to activate.  When installed in an automobile, the driver would have to place his or her finger on the sensor before attempting to start the vehicle. If the device recognizes the user's unique pattern of subcutaneous blood vessels, the automobile will start. If the device does not recognize the user as an authorized user, the ignition of the automobile remains deactivated and the automobile will not start. Although this technology is commonly referred to as "biometric fingerprint technology" it actually analyzes the pattern of blood vessels and not the fingerprints of the person.

25.     In addition to offering products containing the Hawk Patent, Aronson has been soliciting "investors" to invest in the Aronson Companies to promote devices using the Hawk Patent.  Aronson and his companies are using the Hawk Patent to perpetrate a fraud upon

unsuspecting investors. By using a technology that actually exists, Aronson's solicitation of investors is deviously deceptive. This form of fraud has been used before by at least one of the Originators of the Hawk Patent, and has now been recycled by Aronson and his companies.[2]

26. At all times material, Aronson and the Aronson Companies knew or should have known that the patent allegedly transferred by David Coriaty belonged to Hawk Biometrics Inc. at the time of the alleged transfer. At all times material, Aronson and the Aronson Companies knew or should have known that the Hawk Patent was the subject of litigation involving the foreclosure of the Hawk Patent.[3]

27. After Spanakos became the owner of the Hawk Patent by virtue of a court order, Spanakos sent a cease and desist letter to all known parties that previously advertised and attempted to market the Hawk Patent as their own.

28. Specifically, on September 11, 2015, Spanakos sent cease and desist letters to Auto Secure representatives, Alan Aronson, Frank Smith, Keith James, and Steve A. Gall. Attached hereto as Composite Exhibit "H" are copies of the cease and desist letters.

29. On or about September 15, 2015, Aronson responded by claiming rights in the Hawk Patent and encouraging litigation. *See e.g*. Aronson Cease and Desist Response attached hereto as Exhibit "I." Thereafter, Plaintiff requested proof of the purported rights which Defendant Aronson refused to provide. Plaintiff also attempted to depose Defendant Aronson in *Spanakos v. Hawk System* to obtain more information about the infringement yet Aronson

---

[2] Plaintiff Spanakos filed a shareholder derivative lawsuit against the former directors and others in *Spanakos v. Hawk,* Case No 50 2011 CA 016775 (Fla. 15th Cir. Ct.). The directors which included Originator David Coriaty created an elaborate investment scam wherein they used the Hawk Patent to embezzle millions of dollars from unsuspecting investors.

[3] *See Spanakos v. Hawk System*, Case No 50 2011 CA 016775 (Fla. 15th Cir. Ct.) (enforcing a security interest agreement that granted Spanakos the rights to the Hawk Patent).

refused to answer questions and walked out of a court ordered deposition.

30. Despite Spanakos' written notice to Aronson informing Aronson and the Aronson Companies of the infringement of the Hawk Patent, Aronson and the Aronson Companies have refused to stop their infringement and have refused to provide any proof of their alleged defenses.

31. Rather, Aronson continues to make, use, and offer biometric security system services, through various companies, including but not limited to the Aronson Companies, in a manner which infringes the Hawk Patent. *See* Aronson Advertisement of the Hawk Patent attached hereto as Exhibit "J."

32. Aronson and the Aronson Companies' multiple instances of infringement of the Hawk Patent have been and continue to be willful because Aronson and the Aronson Companies knew of the Hawk Patent foreclosure, were notified by Spanakos of the infringement of the Hawk Patent, failed to cease and desist from further infringement, and continue to offer biometric security systems using the Hawk Patent in violation of Spanakos' patent rights protected by federal law.

33. Neither Aronson nor the Aronson Companies have a valid license or right to use the Hawk Patent.

34. As the direct and proximate result of Aronson and the Aronson Companies' continued patent infringement, Spanakos has been damaged and continues to be damaged.

35. Incredibly, on June 1, 2017, Aronson contacted Spanakos attempting to sell "*his rights to the* [Hawk] *patent* for a sale price of "*$250,000.*"

36. In his communications, Aronson also divulged to Spanakos that Aronson had business contacts and business plans.

37. On June 8, 2017, Aronson contacted Mr. Spanakos informing him of *"outstanding business plans with three huge strategic partners."*

38. On June 20, 2017, Aronson contacted Spanakos again advising Spanakos that the sale price was now *"300,000 for the rights"* and that the offer would *"double to 500,000"* after attempts to depose Aronson.

39. Spanakos is entitled to recover treble damages from Aronson and the Aronson Companies sustained as a result of the defendants' wrongful acts, plus any attorneys fees and costs incurred in bringing this lawsuit.

40. Plaintiff Spanakos respectfully demands Final Judgment in his favor and against Aronson and the Aronson Companies, jointly and severally for damages, treble damages, and the attorneys fees and costs incurred in bringing suit.

## COUNT II
### Injunctive Relief
### (All Defendants)

39. Spanakos re-alleges the allegations contained in paragraphs 1 through 20 above as if fully set forth herein.

40. Aronson and the Aronson Companies continue to infringe, induce, and/or contribute to the infringement of the Hawk Patent by advertising, soliciting and promoting business and/or new customers using information and or materials deriving from the Hawk Patent.

41. On June 01, 2017, Aronson contacted Mr. Spanakos attempting to sell *"his rights to the [Hawk] patent."* In his communications, Aronson divulged to Spanakos that Aronson had business contacts and business plans for marketing the Hawk Patent.

42. On June 8, 2017, Aronson contacted Mr. Spanakos again informing him of

*"outstanding business plans with three huge strategic partners."*

43. Aronson and the Aronson Companies have demonstrated a brazen and contumacious disregard for the law and for court orders. The most recent examples being Aronson and the Aronson Companies' refusal to appear at depositions in the patent foreclosure case pending in state court, leading to an order requiring him to appear under penalties of being found in contempt of court, only to storm out of the deposition refusing to answer questions after claiming that the Hawk Patent is his. Aronson and the Aronson Companies have demonstrated that unless stopped by the Court, Aronson and the Aronson Companies will continue to infringe upon the Hawk Patent.

44. Spanakos is entitled to injunctive relief in accordance with 35 U.S.C. §§ 271, 281, 283, and 284, prohibiting and preventing Aronson and the Aronson Companies from continuing infringe upon the Hawk Patent.

45. Defendants' actions are causing irreparable harm to the Plaintiff and will only be stopped through Court intervention. Plaintiff has no adequate remedy at law since the continued misuse of the patent will permanently damage the goodwill that could be associated with the patent.

46. Plaintiff Spanakos respectfully requests that the Court issue a preliminary injunction prohibiting Aronson and the Aronson Companies from using the Hawk Patent in any way, followed by a permanent injunction prohibiting Aronson and the Aronson Companies from using, advertising, marketing, or otherwise infringing upon the Hawk Patent.

### **Prayer For Relief**

Plaintiff Spanakos respectfully requests that this Court enter final judgment against Aronson and the Aronson Companies, granting Spanakos the following relief:

      A.      A judgment holding Aronson and the Aronson Companies liable for direct infringement of the Hawk Patent;

      B.      Preliminary and permanent injunctive relief prohibiting Aronson, the Aronson Companies, and any of their officers, agents, representatives, assigns, licensees, distributors, employees, customers, related entities, and those acting in privity or acting in concert with them from;

      1.      infringing, inducing, and/or contributing to the infringement of any of the Hawk Patent.

      2.      soliciting any new business or new customers using any information or materials derived from infringement of the Hawk Patent.

      C.      Final Judgment for damages resulting from Aronson and the Aronson Companies' infringement of the Hawk Patent in an amount to be proven at trial, together with pre-judgment interest and post-judgment interest;

      D.      A judgment declaring Aronson and the Aronson Companies' infringement of the Hawk Patents to be willful and deliberate, and a trebling of damages pursuant to 35 U.S.C. § 284;

      E.      A judgment declaring this to be an exceptional case, and awarding Spanakos for his attorneys' fees, costs and expenses incurred in prosecuting this action pursuant to 35 U.S.C. § 285; and

      F.      Such further relief this Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Spanakos demands a trial by jury of all issues so triable.

       Respectfully Submitted,

        MESA & PEPIN, LLC
        66 West Flagler Street, PH1
        Miami, Florida  33130
        T: (305) 863-1000
        F: (305) 863-1022
        Service Emails: mesalaw@aol.com
              mcarcano@mesapepinlaw.com
              jessy@mesalaw.net

       By: /s/ Manuel Arthur Mesa
         Manuel Arthur Mesa
         Florida Bar No. 0885819

## Certificate Of Service

  I HEREBY CERTIFY, that a true and correct copy of the foregoing document was filed with the Court using CM-ECF System this 21st day of August, 2017.

        MESA & PEPIN, LLC
        66 West Flagler Street, PH1
        Miami, Florida  33130
        T: (305) 863-1000
        F: (305) 863-1022
        Service Emails: mesalaw@aol.com
              mcarcano@mesapepinlaw.com
              jessy@mesalaw.net

        By:/s/ Manuel Arthur Mesa
        Manuel Arthur Mesa
        Florida Bar No. 0885819